Our next case is Walsh v. Eastern Montgomery County Area Local 2233, number 23-1026. And you may proceed whenever you want. May it please the court. Simon Brewer for the Secretary of Labor. I'd like to reserve three minutes for rebuttal. That'll be granted. When Walter Kalecki sought to run for president of Local 2233, he unambiguously manifested his intention to run for president. He nominated himself for the office. He indicated how his name should appear on the ballot for the office of president. He signed and returned the form given to him on the first date that he could. Were that not enough by itself, he separately sent letters to the election committee's members saying explicitly that he accepted his self for president. Well, as we all know, there's the form that he didn't circle except. That's exactly right, Your Honor. He did not circle the word except on his form. But even with his not circling the word except, his intentions were unambiguous and no reasonable objective election observer could have had any doubt about his intention to run for office. By disregarding all of those objective manifestations of his intent, the union acted unreasonably in violation of the LMRDA. And for that reason, the district court should have declared the election void and directed an election under the secretary's supervision. I welcome the court's questions. So I think we sent around a focus letter for oral argument. And I think that the first question on that focus letter went something like this. Why should we view the circle, one, either accept or decline as a qualification as opposed to a rule or requirement for union office, union candidacy? And maybe just to enlarge that a little bit, it seems that qualifications, at least in the regs and in other areas, almost imply substantive qualification. How long have you been a member of a union? What technical expertise? Maybe if you want to be treasurer of the union, are you good at arithmetic? But they tend to be grounded in substance. And circle one, and one of the reasons they ground them in substance and one of the reasons the case law says they have to be grounded in substance is to give everyone fair notice of whether they have the attributes. If you aspire to be union treasurer, you might want to refresh on your arithmetic so that you have fair notice of what's required. And so why should we view, if that's the understanding of qualification, circle one as a qualification as opposed to just a procedural rule for how a union administers its election? Two responses, your honor. So first, the union itself treated it as a qualification requirement in this case. The act sets as a standing are eligible to run for union office subject to reasonable qualifications uniformly imposed. And so the union's election committee on appendix 100 cited it as the substantive basis for disqualifying Kolecki's candidacy after duly acknowledging his nomination. So the union treated it as the substantive basis for his disqualification. And as a result, the parties in the district court throughout this litigation have treated it as a substantive qualification. So I know you have another reason, but I don't want to prevent you from getting to that. But let me just ask this. What if instead of circle one, it said your nomination form has to be filled out in blue ink, and he filled it out in pencil or black ink, heaven forbid. Would you view that as a qualification for office as well under these circumstances? Or is that just a procedural rule about how you're supposed to carry on a union election? If the union cited that is the substantive basis for the candidates qualification, that would also be a qualification requirement. And but to be clear, even the procedures have to be reasonable under the act, the act, there's a lot more deference. So teens because because yet we don't want the Secretary of Labor kind of micromanaging unions all the time. No, the act strikes a balance between the union self governance, but it subjects both nomination procedures, the procedures themselves and the qualification requirements, both must be reasonable. But the one for qualifications is is a really strong version of reasonable, it's reasonable, uniformly imposed. And that's where we have the most case line knowing that that standard has a lot of tea. Definitely. That's where most of the case law has been. But other seemingly procedural steps have also been treated as qualifications. For example, the Secretary's interpretive rule recognizes that the deadline for the submission of candidacy could be treated as a qualification requirement. And that's the regulation section 452.51. Or take the steelworkers case in the Supreme Court example, there, the union urged that the Supreme Court treat the attendance at the required number of meetings as a procedural requirement. And the Supreme Court explained that even examined from that perspective, it still had a restrictive effect on union democracy and struck it down under the act. So the Secretary is saying on the facts of this case, where it is treated as substantive basis for the disqualification of a duly nominated candidate, it should be treated as a qualification. So, so this is a hypothetical, but if the union would have come and said, forget it being a qualification, it's just a rule. Right? Because because one of the reasons that you say is that they cited it as a qualification, disqualification, as opposed to a rule based disqualification, we just have a rule, it's not about your qualification. There, you would it, you would still argue that would be unreasonable, but you wouldn't get the benefit of the really favorable case law in that comes with the uniformly imposed. If I'm understanding your honors question correctly, if the union in that circumstance said we have this rule, and your failure to abide by this rule means that you may not run for office, even though you have been duly nominated, that would be a qualification requirement under the act. And it must be reasonable and uniformly imposed. So it seems that you're saying that anything that prevents someone from running from being a candidate is under the act when we give meaning to the term qualification. If it prevents you from running for office, even if it's blue ink versus black ink, it's a qualification, not a rule. If that's the way the union treats it, contrast that, for example, the laborers case in the Ninth Circuit in 1994 that we cite in our brief, where there the union limited the total number of people who could be nominated for an office, the Ninth Circuit treated that as a nomination procedure under the act rather than as a qualification. And that makes sense. No individual candidate was disqualified from running from the acts baseline presumption that all eligible all members in good standing are eligible to be democratic effect. That's the analysis for reasonable your honor. That's what this court has set forth in local 30. No, whether or not it's a qualification doesn't itself to turn on some prior reasonableness adjudication. So but to determine whether or not a qualification such as this one is reasonable, the court looks to the balance of the anti democratic effects and the union interests advanced in just is a qualification. What is the qualification? The bylaws say acceptance on the form doesn't say circle on the form, you know, forgetting to blue ink or black ink. So what exactly is the secretary's interpretation of the qualification here? So what the secretary is saying is that the union has treated the circling direction as itself a qualification as your honors question suggests, that's not contained anywhere in the bylaws. The bylaws say that the candidate must accept must submit an acceptance of nomination, and collect he did that he indicated his acceptance on the form and in addition on the letters that the bylaws also contain some language about the form of the acceptance, although it was the union that disregarded the language about the form of the acceptance. So to the extent the qualification is the candidate must have accepted collect he did that, to the extent that the union has imposed additional qualification requirements that the acceptance be in the form of circling the word except that is unreasonable under the act. The bylaws didn't mention the form at all. The bylaws suggested that the acceptance should be in the form of a petition provided by the Secretary Treasurer to any candidate upon request. And that was what we're dealing with here, right? No, Your Honor, collect he requested such a petition from the Secretary Treasurer, the Secretary Treasurer said that no such form existed. Instead, he got some a different form, there's not in a petition from the reporting secretary. So he provided he completed the form with again, the exception of circling the word except that was provided to him by the union. But if the union's position were that the form of his acceptance were material, I think that's contradicted by its own disregard of its bylaws about the form of the acceptance that you seem to be saying, he used the form he was given. And even though he didn't circle it, his the way he completed reflects acceptance. Given that he self nominated himself, what if he had circled decline, which would be an intention with nominating himself? Would they have a duty to ask him about that? I mean, there's some argument in your brief that oh, they didn't even call him they had three days, they could have acquired under reasonableness. Perhaps in that circumstance, there would be some genuine ambiguity about his intentions. And maybe in that circumstance, the union would have some justification for saying that he did not meet the qualifications for see, this is where it gets a little bit gray for me. It's got to be uniformly applied, right? At what point does it, you know, duty to inquire? I mean, isn't just putting a circle around a word kind of a black and white type of issue. If you don't do it, you're not in if you do you are in. Absolutely qualifications must be uniformly imposed. But don't we don't we risk it if we start to get into well, you know, we think he wanted to and or we did in you know, shouldn't we just go with the way the union wanted to be? No, Your Honor, collect he's certainly substantially comply. And as our brief suggests that this court has held substantial compliance is sufficient to comply with the union's bylaws in protests of election decisions. And the same logic should apply here. So so let me just let me just follow up on the chief's question here. Because we say it's unreasonable here, because we're looking at just all these other things. He filled out these forms, we all knew he wanted to self nomination that makes it more likely that he's actually going to accept a self nomination. So a lot of that goes, you know, seems to suggest that what his intent was that he would definitely accept. But you might be downplaying too much the interest that a union has in demanding form compliance with how it conducts an election. If you can imagine a political election where there's a bubble for Candidate A, a bubble for Candidate B, and a voter leaves both bubbles, empty, and then writes next to Candidate A, I choose him or her, you can sit there and say, oh, if you read it, it looks we know who they're voting for. But yet, there might be a reason that says just please, for the sake of election integrity, fill out the bubble. And so I don't know that requiring a circle or a filling out a bubble is necessarily a bad thing, because it minimizes the judgment calls that auditors or somebody else may have when it comes to looking at union results. So we can all sit there and say, oh, on the facts of this individual case, right, it seems clear, but the chief's question went to uniformity, and how maybe demanding that you actually do the circling is a good idea from a uniform perspective. What do you think? So as an initial matter, the union has never put forth any justification for the circling requirement. In the district court, it put forth no justification. Its brief doesn't defend the reasoning adopted by the district court, and its brief puts forward no new reasoning or argument about what purpose the circling requirement serves. Uniformity itself cannot be a justification for a basis, but the act requires both reasonableness and uniformity. So I think as an initial matter, uniformity itself can't be the justification. And as the Supreme Court has told us, the justifications have to be put forward by the union itself in litigation. Maybe if a union had put forward a strong argument and evidence in favor that this is the best rule, that it serves important purposes, perhaps that would outweigh any anti-democratic effects. But on the facts of this case, where the union has put forward no justification, it's difficult to see how the rule could survive the balance. And so this might lead a little bit to the remedy question, right? So the remedy you're asking for is that we have a whole new election for president after the three-year term is almost done, more than half elapsed at least. And so then the question is, even if we have record evidence that might not be able to be used for the union's justification, we can still consider that when we begin to fashion a remedy. And we can say, okay, they didn't justify it. They didn't fully explain it on this ground or that ground. But before we do, the decently significant remedy of conduct a brand new election for maybe four months of a term of president, you probably know better than I know, but I'm just guessing a little bit, but for four months of the remaining term of president, can't we look at all those things and account for them at least at the remedy stage? No, the remedy specified by the act is mandatory. The court, if a violation may have affected the outcome of election, the court shall declare the election void and order the new election under the secretary's supervision. The act and the Supreme Court in the glass bottle blowers association case emphasized that this is mandatory and required by the unambiguous language of the statute. So can I just do it? I mean, I get it, but what if the term expired by the time, it would just move, right? Are we moot then? Or do we do a new election for a term that's already come and gone? It would not be moot. And that is indeed the exact holding of bottle blowers association. Even if the union has held an intervening unsupervised election, the case is not moot and the required remedy is still a new election under the secretary's supervision. And the Supreme Court explained the reasoning for that. It's because that is the only way to ensure that the office holders do not occupy those offices by dint of the violations that had occurred. So even though new office holders may have been elected in an unsupervised intervening election, the remedy is still required. I just have two factual questions. Is there anything in the record about self-nominate other self-nominees who have not circled? There's nothing in the record about other self-nominees. Is there anything in the record about one of the bylaws said that the process is to verify eligibility? Is there anything in the record about how verification of eligibility, you know, are there follow-up calls? Are there, how is it conducted? There's nothing in the record that would describe how that's conducted other than reviewing the forms, which the election committee members explained they did. I also had a question about the reg here with the different factors. Was that subject to to notice and comment? It was not. Okay. Because I didn't see that. Is that in the record anywhere? The secretary doesn't have the authority to promulgate legislative rules implementing Title IV of the act. Okay. So since the earliest days of the regulation, it's been construed as an interpretive rule. So it's mandatory then? In other words, these factors, they're not just things that we could disregard, I suppose. Sorry, Your Honor. It does not have to be forced and effective law. It's an interpretive rule. Okay. Gotcha. So what's the plan then? Is this a Skidmore deference? Is this what we're talking about? Yes, Your Honor. We think that under the factors set forth in Mead and other Skidmore cases, these reflect the administering the act over many decades. And we think that the court, as other courts of appeals should find them persuasive, should find them useful in applying the requirements of the act. So our obligation is to look at them and apply them to the extent they have the power to persuade. And if they don't have the power to persuade us, it's as if they were never written. Yes, Your Honor. If they're not persuasive, the secretary's position can also be in the text of the statute. Again, we think other courts of appeals have found them useful, and they reflect the secretary's experience in this area of the law. But that requires a Skidmore step. But they do not themselves have the force and effective law. Okay. Thank you. All right. Thank you, counsel. And we'll hear from your adviser. May it please the court. Good afternoon. My name is Patricia Collins. And in this matter, I represent Eastern Montgomery County area, American postal workers, local 2233, which I will call local 2233. So as not to use up all my time. Thank you for this opportunity to argue the matter before you just as an initial matter. I take issue with the argument that Mr. that this nomination and his intention was unambiguous. Under the way the Constitution is written, it requires the member to fill out the form completely get handed in a blank form that they would not have accepted his his his nomination doesn't say complete compliance. And it doesn't seem like the union adheres to complete compliance with this bylaws from the forum. Yes, it says you have to the requirement is there's a form, fill out the form and return it. I think implicit in that requirement is that the form be filled out completely. And you'll see if you look at the actual form, but explicit in the bylaws, it says it should be provided by the Secretary. I mean, we're ignoring that. I mean, my point is, you're arguing for an explicit compliance was not there, correct? Do you mean I'm not gonna make sure I understand your question. Do you mean on behalf of the local that that they somehow did not comply with their own rules? Is that the explicit with the explicit language in the bylaws? I would posit that they did that the what the bylaws require is a form and that's a form provided by the Secretary. Correct. Correct. Explicitly. It does say that. And you're arguing for implicit interpretation of well, I think it's a reasonable. I mean, as I said, if he had to hand it in a blank form, there would be no way to know on the face of the form that he was accepting the nomination. And the reason for that is exactly as Judge Phipps was, and the Chief Judge were pointing out before is that there needs to be some uniformity, there needs to be one way for an election committee to decide who the proper candidates are. And what the bylaws in the union over years of practice, and the record is clear, this was form was used over years, over and over again, even by the member, the candidate in this case, he had filled out the I think I asked your, your friend on the other side of the question, where I was really making the uniformity argument may be strong for your half, where I said, where I said, you know, we can't fill out bubbles, you know, for one candidate or another, but that relates to the electorate in voting. Right? This this isn't we aren't auditing the voting, we aren't doing anything else like this, we're just at a really different stage of elections, where it candidate nominations. And so, you know, I can get that, that, you know, we want you to fill out the bubble when it comes to the, you know, general elections for, you know, elected office, politically elected office. But here, when we're talking about candidacy, you know, do we have to be as rigid? You know, can't can't we just kind of look at gosh, he clearly wanted it. He self nominated himself, he went back, he told everybody he wanted it. Your argument makes a ton of sense to me on uniformity, if it's ballot counting itself. But the nomination for candidate is just different, isn't it? I don't think so. And I think if you look at the the answers to the interviews from the actual committee members, what they said was, there was no way to know and we shouldn't exercise discretion. In other words, you could do this the other way. You know, my buddy is running, the guy we want is running, he filled out the Fort wrong, let go, let him through. In other words, there needs to be strict set of rules about how people get to be candidates, so that the election committee is not free to exercise discretion is not free to kind of run the rule one way this time, and not the other way another time. And there's nothing in this record. There's no other case in this record, where instance in this record, where a candidate forgot to circle except, and got to be a candidate or forgot to circle except in this gentleman had done it in the past itself. Right? That's right. He had done it properly before. So all those rules about was there notice and and does it have an anti democratic effect? It's clearly not the case. The record, what is exhibit W? I it's in the record. It's I believe that that is it's from 2003. But it's not in the pleading that had the exhibits. It's never mentioned. There's no explanation. Yes, I think because I think it was just part of a production from the local. There was a request for production as there are in these cases, and it accompanied the records of election from, I believe 2003. That was the whole, the whole package of nominees from 2003. We have no record evidence of what happened with Mr. Wagner Wagner, and whether there was any follow up or quite I don't even have his form that there was nothing in the record regarding his nomination in 2003. There's the record is devoid of any evidence about exhibit. So you don't so this, what I saw this exhibit W is his handwritten not on the form, acceptance of the nomination. And then if you turn to the slate of candidates, he's not on the slate of candidates. But you don't you don't know if he circled or what his status of his form was, I would be delighted to argue it. But we did not develop that record. So I'm just gonna ask and maybe you've already answered this, but what is the union's interest, if any, served by the form completion requirement? And then I guess the follow up would be, what's the relationship of the form completion requirement to that interest? Your Honor, that as it was said, it's on the it is in the record, you know, contrary to today, I'm talking. Yeah, it is in the record that that the Executive Committee or the I'm was interested in having a clear statement in the four corners of the form, that it be filled out properly and that either accept or decline be circled. And if you didn't circle except, then you weren't going to be a nominee. And their interest was in not exercising its discretion in deciding who candidates were that it should, they needed to know unambiguously, whether he wanted to be a candidate. And that was the place to look under the bylaws. So that goes to uniformity, then it goes to both really, it goes to uniformity, because, as I said earlier, we want the the election committee to make the same requirement, the same judgment every time on every form, and it goes to reasonableness. It's a procedural requirement. And the case laws is clear, I think, on the issue of that's a little bit of a lower standard than if it's a qualification, such as being being how long you've been a member and all that kind of stuff. But the, the reason is that if we have everybody fills out the form, and everybody does it the same way, and everybody knows what the form is, then the rules are clear to everyone about how you get to be a candidate for election. And I think that's clear. With the buddy, it sounded like it was also aimed at, or from that example. And I, it sounded like you were trying to argue for some sort of elimination of cronyism. Exactly. Amongst Yes, the ranks or, or current leadership or something. That's where I was headed. Exactly. But the, the, the reason you want this election committee to not exercise discretion and making its elections to the slate of candidates is because that's a place where abuse can occur. And that's the reason for the rule. And the reason they had done it this way since at least 2003. So, so on this notion of kind of, is this a rule, or is this a qualification, your friend on the other side says you can raise this below, we therefore can't consider it or anything like this. But it does strike me that we're just in kind of a different space, either unions going to just get a lot more deference for its procedural rules. If it says blue ink or black ink, it's not a qualification, qualifications, you have to make them uniform to do all of these other things. So maybe you didn't argue below is that is that now kind of forfeited in a way that we're stuck with the record below and the justifications below. And so we have to see this case is only a qualification case. Or should we say maybe maybe it's just not a qualification. It's just procedural rule. It's a procedural rule. I mean, I agree it's a procedural rule. And we cited case law below and in particular Acosta, which is a district court case, but remarkably similar to this one. So worth reviewing the one from the I think it's the Eastern District of New York and cited in our papers. But in that case, the you know, the court kind of framed it in not in terms of there's a difference between a procedural rule and qualification because the the language of the statute itself is a little ambiguous about that. It doesn't set out procedural versus substantive rules. And instead, what the court focused on is does it have an anti democratic effect? And if it doesn't, we're done with our reasonableness analysis, right? If it's a rule that's applied to anyone can comply with it, it doesn't cut out rule doesn't cut out large numbers of candidates. It doesn't impose a huge burden on the candidates who are running doesn't have an anti democratic effect. And we're not so concerned about the union's justification, or those those other considerations. And this is exactly that role that anyone can comply with it. It's very clear level of anti democratic effect is across elections in time, as opposed to in this particular, this particular case, where it resulted in there being an uncontested race for that particular position. That's, that's right, that that the way I read the case law, and I believe it's pretty clear under the case laws, but the rule on its face facially, does it have an anti democratic effect? And the answer in this case is no. So is it your position that I asked you your adversary about 29 CFR section 452.36 about reasonableness of qualifications, you're saying it's not a qualification at all. I haven't said I haven't said that I don't think I can under the language of this under the black letter language of the statute, the statute says reasonable qualifications. And what the case law has done is kind of use the balancing test to capture those procedural. I think you can read the statute reasonably to mean that any limitation on the right of an eligible member to run for office is a qualification. And the case law provides the analysis, it's an unusual case, it's an unusual case, there's not a lot of case law on it. As far as the district courts reliance on the on the regulations, I don't think we need to dwell too long. I agree. But the law is pretty clear. They're interpretive. But what I will say is that in each case that the lower court cited the interpretive regulations in support of his opinion, the court also cited Supreme Court cases that that embodied those principles. So I think he was in good shape in terms of his law that applied to this court. And don't disagree that those are interpretive. So that would be a novel argument for me to me. And you know, there's, there's some argument in this case that it's that that sort of that we all knew, but we all knew he wanted to run and we all knew and why can't we just let it slide. And I think that's a dangerous precedent. I think the what the union tried to do here was to level the playing field and apply the rules strictly to each candidate. And and that is what they did. And I don't think that that on its face has an anti democratic effect. As a matter of fact, it has a democratic effect. If I was going to run for office, even using the electorate. As an example, if I were to run for office, I would need to fill out my nomination form, right, and get the right number of signatures and do all those, those things. And those are those are strict requirements. I wanted to answer the court's question about remedies and whether there's a mootness issue here. And I think the court should know that these are three year terms that started to run in January of 2022. It starts on like the second Monday of January or something like that. So this term will end in January of 25. And depending on timing and appeals and all the rest of it, we are going to get to a place where I do think mootness is an issue. And indeed, the the requirement to be a qualified member in good standing will exist if the court does order another election. And those include things like has the candidate paid his dues and all those kinds of things. So enough time has gone by that that those are real questions and could be as it seems to me that it's mandatory under the statute. It uses the word shall, but that the discretion is left to the secretary if, you know, it does end up being sort of impossible or moot. Yeah, yeah, yes, that's true. And yes, the remedy under the statute is the remedy under the statute. There's no other remedies provided for in the statute. But it does sort of illustrate that this is not a case that calls for that remedy, that that it's not as if, you know, we that the union had done something completely unreasonable, anti democratic or outside the realm of a reasonable election committee to do. And that's the reason for the deference in the case law that the union should be able to run its election the way it wants to. This is a pretty high level of interference for this type of issue where, you know, nothing was done, it's not discriminatory, it didn't cut out large issues of candidates, it didn't, it didn't have the effect of making it possible for certain people to run. So certainly, that remedy is reserved for those cases that are the most egregious violations. Okay, thank you. Thank you. Thanks. Do you have anything else to add? No, I think I got to my point. Okay, great. Thank you. Kept an eye on. Okay, great. And we'll hear rebuttal now. Two points, Your Honors. The first is that the union has conceded that this was a qualification requirement under the statute. And so it must be assessed under the balancing test for reasonableness set forth by this court in Local 30. It fails that test for the reasons described in our brief. The union never advanced the justification it now offers to this court below or in the briefs, and in that rule undoubtedly has an anti-democratic effect. In the 2021 election, the union members had no opportunity to vote for the direction that their union would take. They had no opportunity to hear even differing views for the way that the union would go in the future because there were no campaigns. The election was decided by acclimation after the election committee disqualified Kolecki. The justification now... Shouldn't the reasonableness be determined across elections rather than just with respect to this election? Across elections, it's pretty low burden to circle something on a form, and there's no evidence that it's ever excluded any other candidate. So how is it anti-democratic? So the burden is admittedly low, but even a low burden requirement cannot be justified by a total dearth of union interest. And for example, the Fifth Circuit case that we cited, where the court acknowledged that the burden imposed by the requirement was slight, the court nonetheless invalidated that requirement because the justifications advanced by the union were too flimsy to support even a slight requirement. And that follows from the Steelworkers case again, where the Supreme Court rejected the argument that the burdensomeness of the requirement is the determining factor and whether or not is a valid requirement under the act. Instead, it depends on this balance. Even taking the unions now offer justification about needing to determine it from the four corners of the form. From the four corners of the form Kelechi submitted, there could have been no ambiguity about his intention to run for president. And certainly, once you broaden to the evidence the election committee also had in front of it, a letter explicitly accepting his own nomination and requesting information about the procedures for candidates running for election, the committee could not have had any reasonable doubt in its mind about whether or not Kelechi intended to run for president. It therefore should have allowed him to run and its failure to do so was a violation of the act. We urge that the judgment of the district court be reversed. Thank you. Thank you, counsel. We'll take this case under advisement and thank counsel for their excellent briefing and argument in this case.